■ NEXBANK, SSB, Respondent, v JEFFREY SOFFER et al., Appellants. [41 NYS3d 217]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered February 4, 2015, which granted plaintiff's motion for summary judgment on the issue of liability and denied defendants' cross motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

For the past several years, the parties herein have been involved in extensive litigation in both Nevada and New York over the terms of a construction loan and a guaranty provision contained therein. A recitation of the history of this litigation will provide the necessary background for the present appeal.

On October 25, 2006, Turnberry/Centra Sub LLC (Borrower), a company controlled by defendants, entered into a construction loan agreement with a group of lenders in an aggregate principal amount of up to $475,000,000. Pursuant to the agreement, plaintiff is presently the lenders' authorized agent. The

purpose of the loan was to finance the Borrower's construction of a mixed-use retail and office development in Las Vegas, Nevada, called Town Square Las Vegas. The loan was secured by Town Square's property, located in Nevada.

As part of the loan agreement, defendants personally executed a nonrecourse carve-out guaranty, known colloquially in the industry as a "bad boy guaranty." This guaranty requires defendants to compensate the lenders in the event they or the Borrower engage in certain acts that could harm the lenders' interest in the collateral or the lenders' ability to enforce their rights under the loan agreement. As pertinent to this appeal, the guaranty bound defendants to pay plaintiff, as agent for the lenders, for "[a]ny loss (which may include loss of principal or interest and reasonable attorneys' fees and collection costs) . . . arising out of or connected with . . . the placing voluntarily of a Lien on any portion of the Mortgaged Property by Borrower." The term "Lien" is defined in the loan agreement to include "any . . . encumbrance or charge on or affecting the Collateral."

On March 2, 2009, the Borrower defaulted by failing to pay the loan at maturity, and a nonjudicial foreclosure sale was scheduled to take place on March 1, 2011. On February 25, defendant Jeffrey Soffer and the Borrower filed a complaint in the District Court of Clark County, Nevada, alleging, among other things, that plaintiff's predecessor, as agent for the lenders, breached an alleged agreement to extend or restructure the construction loan. On February 28, Jeffrey Soffer and the Borrower filed an ex parte application in the Nevada court for a temporary restraining order enjoining the nonjudicial sale. The next day, March 1, they recorded a lis pendens on the Town Square property. The foreclosure sale proceeded on March 4 and an affiliate of the lenders acquired title to the property.

Thereafter, Jeffrey Soffer and the Borrower filed an amended complaint in the Nevada action asserting a claim for specific performance of the alleged loan restructuring agreement and seeking an order directing plaintiff's predecessor to transfer the property either to defendants or to a new business entity controlled by them. A second amended complaint was filed in November 2011, adding claims against the buyer at the foreclosure sale and also seeking an injunction against the transfer of the property to a third party and/or a declaration that the buyer must transfer the property back to defendants. The litigation proceeded over the next 17 months.

On August 31, 2012, the Nevada court granted plaintiff's predecessor summary judgment dismissing the action. The

court entered an order judicially cancelling the lis pendens on September 6, 2012. Defendants appealed that decision to the Nevada Supreme Court, and on July 25, 2014, the court affirmed the dismissal of the claims to recover the property on the ground that no enforceable agreement to restructure the loan existed as a matter of law. The Supreme Court remanded the case to the District Court for consideration of unrelated claims concerning management fees.

While the Nevada proceedings were pending, on June 11, 2013, plaintiff commenced this action to enforce the guaranty, alleging that the lis pendens and the claims for specific performance and to recover the real property constituted an "encumbrance on the property, thus falling within the definition of 'Lien,' " and therefore triggering the guaranty. Defendants moved to dismiss the action on the ground that the claims advanced in the Nevada action did not trigger the guaranty. The motion was denied, and defendants appealed.

On June 11, 2015, we affirmed the motion court's decision, ruling that Nevada law applied to the definition of "lien" as found in the guaranty and that "[d]efendants triggered the guaranty when they filed a lis pendens on the property, since the lis pendens falls within the definition of lien as an 'encumbrance' under Nevada law" (*Nexbank, SSB v Soffer*, 129 AD3d 485, 485 [1st Dept 2015]).

While the appeal was pending in this Court, on July 25, 2014, plaintiff moved in Supreme Court for partial summary judgment against defendants, seeking damages under the guaranty, including costs and attorneys' fees incurred in the Nevada action. Defendants opposed, and cross-moved for summary judgment, arguing that their claims to ownership of the property in the Nevada action and the lis pendens constituted neither a "lien" nor an encumbrance under New York law and thus did not trigger the guaranty provision of the loan agreement.

On February 3, 2015, Supreme Court granted plaintiff's motion for partial summary judgment and denied defendants' cross motion. The court correctly held that the lis pendens encumbered the property and that the pendency of the specific performance action also constituted an "encumbrance" on the property as it constituted a cloud on title. Thus, the specific performance action also triggered the guaranty. This appeal followed.

The principles applicable to the issues herein are straightforward. There is no question that defendants signed a guaranty and that it was a nonrecourse guaranty.

Since the guaranty here is enforceable, the issue is whether the lis pendens and/or the underlying specific performance action in Nevada constitute an "encumbrance" that would trigger defendants' obligation under the guaranty. It is clear from the facts herein that, under Nevada law, they do.

Defendants now argue, for the first time on this appeal, that once the Nevada court cancelled the lis pendens, the relief they sought in the underlying action seeking transfer of the property back to them no longer constituted an "encumbrance" on the property. As a result, defendants contend that from that point forward, the guaranty could no longer be invoked. This argument is akin to trying to recall a bullet fired from a gun because it missed its mark.

Plaintiff correctly contends that defendants' new argument—which was not raised in either the pleadings, the motion papers below, or in the prior appeal—is not preserved for appellate review and should not be considered (see Mendelsohn v City of N.Y. [19th Precinct], 89 AD3d 569, 569-570 [1st Dept 2011], lv denied 19 NY3d 804 [2012]). In fact, nowhere in any of the prior proceedings did defendants cite the statute in question. Rather, they advanced and relied on an incorrect interpretation of New York's law regarding the construction of "bad boy guaranties." Defendants give no reason why the Nevada statute was not raised below. Therefore, there is no reason why this Court should consider this argument at this juncture in the proceedings.

In any event, defendants' contention is without merit. As we concluded in our prior decision, "Defendants triggered the guaranty when they filed a lis pendens on the property, since the lis pendens falls within the definition of a lien as an 'encumbrance' under Nevada law" (Nexbank, SSB v Soffer, 129 AD3d at 485). Defendants' new argument, that the claims advanced in the Nevada action for the return of the property could not constitute an "encumbrance" once the lis pendens was judicially cancelled, ignores the fact that, while the action, including the appeal, was pending, a subsequent purchaser of the property would have taken title subject to the claims made by defendants, despite the provisions of the Nevada statute. Notably, defendants continued to pursue their claims for a return of the property on their appeal to the Nevada Supreme Court, even after the lis pendens was judicially cancelled. As plaintiff correctly notes, under Nevada law, a lis pendens gives notice of a lawsuit "affecting the title or possession of real property" (Nev Rev Stat § 14.010 [1]). The plain import of the statute is that the *lawsuit*, not merely the lis pendens,

constitutes an "encumbrance" on the real property. A mere breach of contract claim that does not cloud title does not constitute an "encumbrance" on property. The complaint in the Nevada litigation clearly makes allegations that defendants sought a return of the property. These claims clearly constitute a cloud on title to the property and therefore create an "encumbrance" that would permit plaintiff to invoke the guaranty. The mere fact that the Nevada Supreme Court ultimately ruled against defendants and dismissed their action does not change the fact that those claims, while still pending, constituted a cloud on title and were sufficient to permit plaintiff to invoke the guaranty contained in the loan documents. Concur—Tom, J.P., Sweeny, Andrias, Webber and Gesmer, JJ.